## Williams *versus* Holmes.

1. The indorser of an unnegotiable note, who pays it at maturity, is in effect a purchaser, and has all the rights of his assignor.
2. The maker of such a note, who has it discounted at bank, is stopped from contesting the consideration.

ERROR to the Court of Common Pleas of *Indiana County.*

Assumpsit by J. E. Holmes, to the use of Peter Coy, against R. H. Williams, upon a promissory note in the following form:

"$500              INDIANA, PA., February 26th, 1877.

Six months after date, I promise to pay to the order of J. E. Holmes, at the First National Bank of Indiana, the sum of five hundred dollars, without defalcation or stay of execution, value received, and with five per cent. attorney's commission.

                    R. H. WILLIAMS."

Upon the note was indorsed:

"J. E. HOLMES,

    PETER COY.      (This note was paid by Peter Coy.)

                H. A. THOMPSON, Cashier."

Upon the trial in the Court below, before BLAIR, J., the following facts appeared:

On the 24th of February, 1875, Holmes, the legal plaintiff, sold and conveyed to Hugh Williams, a son of the defendant, a tract of land in Pine township, Indiana County, for $500. On the same day a note, of which the above was a renewal, and in the same form and with the same indorsements, was drawn by the defendant. He got it discounted at the First National Bank of Indiana, and paid the proceeds to Holmes, who entered a receipt in full on the conveyance.

On the 7th of October, 1876, R. H. Williams and Hugh Williams entered into an agreement with Holmes, renting the abovementioned real estate to him for three years, Holmes to pay $100 on the note, and to have the option of buying the real estate at the expiration of the agreement for $400, and the interest on the note. At the maturity of the note, Coy, one of the indorsers, and the use plaintiff, paid it. The cashier of the bank testified that "the indorsement on the back of it was to show that he had paid it, so that he could collect it off Williams."

Counsel for defendant asked the Court to charge upon certain points, which with its answers were, *inter alia,* as follows:

2. That if the jury find, from the evidence in the case, that J. E. Holmes, the legal plaintiff in this suit, was first indorser, and Peter Coy, the equitable plaintiff, second indorser on the note in suit, for the accommodation of the defendant, R. H. Williams, and that the said R. H. Williams gave said note to the First National Bank of Indiana, and received therefor the sum of $500, the plaintiffs cannot recover in this suit, even though said Peter Coy paid off said note about the time the same became due and lifted said note out of bank.

*Answer.* If the jury believe that R. H. Williams assumed to pay the purchase-money of the land, instead of Hugh Williams, his son, and for his benefit, and executed the note in suit for that purpose, under an arrangement to that effect between him, his son, and Holmes, and Coy paid the note for the purpose of acquiring the security and enforcing it against the maker, R. H. Williams, he, Coy, would have the same right to recover against the defendant that the bank had, and would be entitled to your verdict for the amount of the note, with interest, less the sums that have been paid. The jury will determine how much has been paid through Holmes under the contract of 7th of October, 1876.

3. That if the jury find, from the evidence in the case, that J. E. Holmes received no consideration for the note in suit, and that R. H. Williams, the defendant, is not indebted to him, the plaintiff under the evidence cannot recover.

*Answer.* If the money borrowed from the bank was received by Holmes, he did receive the consideration of the land, and if R. H. Williams paid nothing he is yet indebted for the land, and would be liable if the facts are found by the jury to be as stated in our answer to the second point.

4. That under the evidence in the case the plaintiff cannot recover.

*Answer.* This point is refused.

The Court charged the jury, *inter alia:*

" The next ground of defence is that pla ntiff cannot recover at all, for the reason, as we understand, that Holmes, who is the legal plaintiff, has been paid, he having received the money that was borrowed from the bank. In other words, that he has no claim against R. H. Williams. In considering whether this defence is effective or not, we must regard the manner in which the alleged payment was made. The plaintiff contends that when the contract of sale be-

[Williams *v.* Holmes.]

tween Holmes and Hugh Williams was made, R. H. Williams stepped in and became paymaster under the contract instead of his son Hugh. The article of agreement was with Hugh, but it is claimed that instead of Hugh paying the money or executing this note, his father became the maker in his stead. Therefore Holmes, if the jury believe that to be the fact, had as much claim against R. H. Williams under the note, as he would have had against his son Hugh. And if the note had not been paid, as it is said, or if the money had not been borrowed from the bank, but the note stood here simply as a note from R. H. Williams to Holmes, then there could be no question about the right of Holmes to recover on the note as against R. H. Williams, unless Williams could show want or failure of consideration or other defence. [Instead, however, of the maker of the note paying it, the money, it seems, was borrowed out of the bank. The defendant did not pay the note, but when it was discounted or purchased by the bank, it is alleged by defendant that the money was handed over to Holmes. That, in effect, paid Holmes—that is to say, he got the money from the bank, but it was not paid to him by R. H. Williams to the discharge of his own liability on the note. The liability of R. H. Williams on that note, as between him and the bank, remained the same after the delivery of the money to Holmes as it was before, and there was nothing to prevent the bank from collecting the note from R. H. Williams.] It has been held that a note of this kind, accompanied with a provision to pay attorney's commissions, is not negotiable. If it was a negotiable security, then it would pass from hand to hand, and the maker of it, although there was a failure or want of consideration, or he had otherwise a good defence between him and the payee, could not set up that defence as against an innocent purchaser for value. But when the note is not negotiable, as in this case, then the maker has the same defence against any person into whose hands the note may fall as he would have against the payee himself. Mr. Williams, the defendant here, has therefore the right to make the same defence against Coy that he could against Holmes, if the suit was brought by him. If there has been any failure or want of consideration, or any other defence, he has the privilege of setting it up. This is our impression of the case as it appears to us."

Counsel for defendant excepted to the answers to the points, and to that part of the charge within brackets.

June 9, 1880, verdict for the plaintiff for $479.60, on which judgment was entered.

Defendant then took out a writ of error, assigning as

[Williams *v.* Holmes.]

errors, that portion of the judge's charge excepted to, and the answers to the points.

*J. N. Banks* and *D. B. Taylor* for plaintiffs in error.

. The note on which suit is brought was not negotiable, and the indorsement thereon by Coy created no liability on his part to pay it: Woods *v.* North, 3 Norris, 407. His payment of the note was therefore entirely voluntary, and he acquired thereby no right of action thereon against Williams: Pownal *v.* Ferrand, 6 B. & C., 439 ; Exall *v.* Partridge, 8 Term Reports, 310 ; Kent Com., vol. ii, *616 and 617.

That he may have thought himself liable, can make no difference: Irvine *v.* Hanlin, 10 S. & R., 219 ; Real Estate Saving Institution *v.* Linder, 24 Smith, 371.

There is not the slightest evidence in the case that the note was given for the purchase-money of the land. No witness said so, and no witness intimated such a thing. It was error in the Court to submit this as a question of fact to the jury when there was no evidence to sustain it: Ashbridge *v.* Kenyon, 15 Leg. Int., 158 ; Sartwell *v.* Wilcox, 8 Harris, 117.

The answers of the Court to the second and third points submitted by the defendant were evasive and unfair; in fact they were not answers to the points at all, but instructions how the jury should find if they believed a different state of facts from those stated in these points. The tendency of these instructions, as also of the general charge, was to mislead the jury, and the judgment should be reversed: Fisher *v.* Larick, 3 S. & R., 319 ; Pennsylvania Railroad Company *v.* Berry, 18 Smith, 272 ; Garrett *v.* Gonter, 6 Wright, 146 ; Philadelphia & Reading Railroad Company *v.* Spearen, 11 Wright, 303.

The act of Coy was not a purchase of the note. He paid it.

*Silas M. Clark* for defendant in error.

The defence is purely technical and utterly devoid of merit. Williams got the land he bought, never paid for it, is in the possession to this day, and now it is most ungraciously urged that Peter Coy, who ignorantly but innocently paid the debt for which he was, perhaps, not legally liable, is therefore a volunteer.

Defendant is estopped.

If the payer of a note stands by and sees it assigned to a third person without giving the assignee notice of an existing defence, he shall afterwards pay the amount of the note to the assignee, although the consideration thereof should

[Orr v. Seiler.]

have entirely failed; and whether his conduct proceeded from ignorance or design: Decker for use v. Eisenhauer et al., 1 P. & W., 476; Rudy v. Wenner, 16 S. & R., 21; Watt's Appeal, 28 Smith, 370; Ackla v. Ackla, 6 Barr, 228; Waters Appeal, 11 Casey, 523; Reel v. Elder, 12 Smith, 308.

One is estopped from alleging the truth when his assertion of a falsehood, or his silence, has been the inducement to action by another party, which would result in loss but for the estoppel: Patterson v. Lytle, 11 Penna. State, 53; Musser v. Oliver, 21 Ibid., 362; Troxell v. Lehigh Crane Iron Company, 42 Ibid., 513; Ayres v. Wattson, 57 Ibid., 360. ·

A party may be estopped by his acts or declarations, made even in mistake of his rights, if by them others have been led to the expenditure of money: Newman v. Edwards, 10 Casey, 35.

A party will be estopped from taking advantage of action in which he has acquiesced for his own benefit: McCully v. P. & C. R.R., 32 Penn. State, 25; Guiterman v. Landis, 1 W. N. C., 622; Com. v. Moltz, 10 Barr, 531.

NOVEMBER 7, 1881.—PER CURIAM: That the bank had an unquestionable right of action against the maker cannot be disputed. Coy in point of fact purchased the note, as the memorandum upon it by the cashier shows. Why then, especially as the note was never negotiable, did not Coy stand in the shoes of the bank? The maker had no more equity against Coy than against the bank. In presenting the note to the bank he was estopped from contesting the consideration.

Judgment affirmed.